HAITHCOCK & HEARNE *v.* SWIFT ISLAND MANUFATURING COMPANY.

A deed conveying to A the land on one side of a river, "with all the appurtenances thereto belonging," does not convey the title to one half of a Ferry which is not annexed as of right as appurtenant to said land.

(*State* v. *Willis*, Busb. 223; *Biggs* v. *Ferrell*, 12 Ired. 1, cited and approved.)

CIVIL ACTION to recover title and possession of one half of a ferry, tried before *Buxton, J.*, at Fall Term, 1874, of STANLY Superior Court.

The ferry in question had been established by the Fayetteville and Albemarle Plank Road Company, by authority of an act of the General Assembly, ratified 16th February, 1859. It was located at Swift Island, across the Pee Dee river. The plank road having fallen into decay, and being discontinued as a turnpike, S. H. Christian, who was the riparian owner on both sides of the river, claimed the franchise of the ferry, and at the time of his death, in 1864, was seized of land on both sides of the river, and keeping up the ferry.

After the death of S. H. Christian, upon failure of his personal estate, his administrators instituted proceedings in the Superior Court of Montgomery county, to sell the real estate for the payment of his debts.

The petition for that purpose was filed at Fall Term, 1867, and at that term a decree was made authorizing the sale of all the lands, mills, and other real estate mentioned in the petition. Among the tracts included was the "mill tract" in Montgomery, and the "Davis" tract in Stanly. These tracts were described fully, but neither in the petition nor in the decree of sale, is there anything said about the ferry.

There was a report of sale made to Spring Term, 1868, by the administrator, in reference to the "mill tract." The report was as follows, to-wit: "The mill on the Montgomery side, and factory, with out-houses and other appurtenances, was bid off by Nathaniel Knight, for the sum of $3,200. D. N. Patterson afterward raised the bid to $3,400, and gave his note, with C. W. Wooley and J. T. Bradly as surety."

This sale occurred on Nov. 14th, 1867, and was confirmed at Spring Term, 1868.

In reference to the lands on the Stanly side, they report that the lands did not bring a fair price, and that the purchaser had not complied with the terms of sale, and accordingly a resale of the Stanly lands, was ordered.

At Spring Term, 1869, they report the sale of the Stanly land as having occurred on Feb. 18th, 1869; that the William Davis tract was bought by one J. G. Christian, for $125. This sale was confirmed at that Term, and upon payment of the purchase money the administrators, in pursuance of the order of the Court, executed a deed, in which the land is described as follows, to-wit:

"All that tract or parcel of land lying and being in the county of Stanly, and described as follows: lying on the west side of Pee Dee river, adjoining the land of William Davis and others, bounded as follows, viz: Beginning at a white oak on the bank of the river, just below the mill, and running

thence due west with Haithcock's and Heron's mill tract, (formerly S. H. Christian's,) 29 chains, to a stone heap in the field, corner of No. 5, thence south 50° 30', east 23 chains to a post oak, by a post oak, thence south 60, east 4 chains to a corner on a line of the mill tract, by a post oak and hickory pointers, thence with said line north 46, east 22 chains, 50 links, to the river, thence up the river to the beginning, containing seventy-five acres, more or less, to have and to hold, to him the said party of the second part, his heirs and assigns forever, with all the appurtenances thereunto belonging."

On the 22d of January, 1870, J. G. Christian and his wife executed a deed, conveying this property to the plaintiff, with a similar description.

Upon the payment of the purchase money for the " mill " tract in Montgomery, the administrators executed a deed on the 25th of September, 1871, to D. N. Patterson, who purchased for the benefit of the Swift Island Manufacturing Company, of which he was a member. This was subsequent to the institution of this suit, which was commenced 12th of September, 1871.

There was conflicting evidence as to whether, at the time of the sale of the " mill " tract on the 4th of November, 1867, the ferry was mentioned as being put up for sale, with that tract, witnesses testifying both ways and contradicting each other.

The deed to D. N. Patterson was for the tract lying between the widow's dower, Robinson's line, and the river, containing about 200 acres, including the mill, factory and appurtenances, operatives houses, islands, ferry and fishery.

It was in evidence that the report of sale was made by the administrators of S. H. Christian, to Spring Term, 1868, of Montgomery Superior Court, of the land sold on Nov. 14th, 1867, in which was included the " mill " tract on Montgomery side, that the report and decree of confirmation made at that Term were for a time misplaced, and by leave of the Court another report and decree supposed to conform to the original,

were allowed to be substituted in their place.   Afterwards the original report and decree were found and restored, and it appearing that there was a variance between the original and the substituted record of report and decree, in this respect, viz : That the ferry at Swift Island was not mentioned in the original record, but was in the substitute, by order of the Court, the original report and decree was restored, and the substitute stricken out.   All this was done by order of the Superior Court of Montgomery county, after notice to the parties interested.   The substituted report and decree were filed previous to the institution of this suit, they were stricken out and the original record reinstated at Spring Term, 1874, of this Court.

The plaintiffs asked the Court to charge the jury that by their purchase of the " William Davis " tract, on the Stanly side of the river, they acquired the right to one half of the ferry as appendant and appurtenant to that tract, they being owners to the thread of the stream.

His Honor declined to give the charge asked for, and charged the jury " that while the plaintiffs as riparian owners had a right to go to the thread of the stream, they could go no further under their deed, consequently they could not be joint owners of the ferry franchise, which necessarily extended to both sides of the river ; that the plaintiffs had to recover upon the strength of their own title, and not upon the weakness of that of the defendant's, and that upon the showing made they were not entitled to recover one half of the ferry.

To this ruling the plaintiffs excepted, but in deference to the opinion of his Honor, submitted to a non-suit, and appealed to the Supreme Court.

*Neill McKay, S. J. Pemberton,* and *J. W. Hinsdale,* for appellant.

*M. J. Montgomery* and *Bailey & McCorkle,* contra.

PEARSON, C. J.   The plaintiff's case rests upon the ground that by the deed conveying to him the land, on one side of the

river, "with all the appurtenances thereto belonging," he acquired title to one half of the ferry. In other words, the ownership of the land on one side of the river draws to it one-half of the ferry. This proposition cannot be maintained. We concur with his Honor in the conclusion that the plaintiff did not make out a case.

It is true, where the right to a public ferry is annexed to a tract of land, as "appurtenant thereto," a conveyance of the land "with its appurtenances" passes the ferry; this is assumed to be the principle of law in *State* v. *Willis*, Busb. 223, and in *Biggs* v. *Ferrell*, 12 Ired., 1. But in those cases the franchise of a public ferry was annexed and appurtenant to the land; whereas, in our case the franchise " to keep the ferry and receive the tolls, for ought that appears is a right " *en gross* " like a right of common or an advowson " *en gross*" and has never been annexed to the land and made appurtenant thereto, either on the one side of the river or the other or to the land lying on both sides of the river at the termini of the ferry.

The ferry was established by the Plank Road Company under the authority of an Act 16th February, 1859, and was used in connection with the plank road and as a part thereof.

It is set out as a fact in the case : " The plank road having fallen into decay and being discontinued as a turnpike, one Christian, the owner of the land on both sides of the river, claimed the franchise of the ferry, and kept it up until his death." After his death the land, on one side of the river, was bought by the plaintiff, and the land on the other side of the river was bought by the defendant. The deeds to both being for the lands, together with "all the appurtenances thereto belonging," and the defendant has since claimed the ferry and kept it up. The charter of the Plank Road Company may have been forfeited for non-use, but there has been no judgment, so far as the case discloses by which the charter is vacated ; so according to facts before us, the plank road is still in existence, and is the owner of this ferry, and above all

there is no evidence that Christian ever acquired title to the ferry, or in any way annexed the right to the ferry as an appurtenant either to the tract of land which he owned on the Stanly side or to the tract which he owned on the Montgomery side, or to both. So for aught that appears the title to the ferry is still in the Plank Road Company, and if it was acquired by Christian, it does not appear that he attached it as appurtenant to his land on the one side of the river or the other, or to both, or whether was not kept by him as a franchise " en gross."

The plaintiffs did not prove title.

No error.

PER CURIAM.            Judgment affirmed.